JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

|  |  |
|---|---|
| DANIEL HAYLER and LETICIA HAYLER, <br><br> Plaintiffs, <br><br> v. <br><br> SAN BERNARDINO COUNTY TRANSPORTATION AUTHORITY, <br><br> Defendant. | Case No.: EDCV 19-02469-CJC(SPx) <br><br><br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [Dkt. 9] AND STAYING ACTION |

## I. INTRODUCTION

Plaintiffs Daniel and Leticia Hayler bring this 42 U.S.C. § 1983 action against the San Bernardino County Transportation Authority ("SBCTA") alleging that their property was taken without just compensation, in violation of the Fifth and Fourteenth Amendments of the United States Constitution. (Dkt. 4 [Complaint, hereinafter

"Compl."].)  Before the Court is the SBCTA's motion to dismiss.  (Dkt. 9 [hereinafter "Mot."].)  For the following reasons, that motion is **GRANTED IN PART AND DENIED IN PART**.[1]

## II.  BACKGROUND

This case concerns a piece of real property located in Upland, California that Plaintiffs have owned since 2002.  (Compl. ¶ 8.)  Last year, the SBCTA—a state agency that possesses eminent domain power—obtained a temporary construction easement over a portion of that property.  (*Id.* ¶ 18.)  The SBCTA's easement encompasses a 635 square-foot area in Plaintiff's backyard and gives the SBCTA and its employees access to that area for construction-related activities for a five-year period.  (Dkt. 11-1.)  According to the SBCTA, it needs this access so that it can move forward with the Interstate-10 Corridor Contract 1 Project ("the Project").  (Compl. ¶ 10.)  The Project, which seeks to add two express lanes to a ten-mile stretch of the I-10 in an attempt to reduce congestion and traffic, is estimated to take five years to complete and cost approximately $929 million.  Plaintiffs complain that the SBCTA's easement will lead to the removal of an eight-foot stone wall in their backyard, unduly burdensome air, noise, and light pollution, and considerable interruption of their ability to use and enjoy their backyard.  They also contend that the $12,000 that the SBCTA offered does not adequately compensate them for this invasion on their property.  (*Id.* ¶ 22.)

On January 17, 2019, the SBCTA filed a direct condemnation eminent domain suit against Plaintiffs in San Bernardino County Superior Court ("the State Action").[2]  (*Id.*

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for March 23, 2020, at 1:30 p.m. is hereby vacated and off calendar.

[2] The SBCTA asks the Court to take judicial notice of certified copies of various documents filed in the State Action.  (Dkt. 11.)  The Court may take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot

¶ 11, Ex. B.)  On May 13, 2019, Judge Lynn M. Poncin granted the SBCTA's motion for prejudgment possession of Plaintiff's property pursuant to California Code of Civil Procedure § 1255.410(b).  (*Id.* ¶ 12, Ex. C.)  That order allowed the SBCTA to take possession of Plaintiffs' property prior to the court resolving how much they are owed for the taking.  (*See id.* Ex. C.)  The order also noted that the SBCTA deposited $12,000 with the California State Treasurer Condemnation Deposit Fund pursuant to California Code of Civil Procedure § 1255.010.  (*Id.*)  The proposed order included language that the money deposited was "the probable amount of compensation," but the court crossed out that description and wrote that the SBCTA "has not demonstrated that $12,000 is the amount of probable compensation."  (*Id.*)

On June 3, 2019, Plaintiffs filed a Petition for Writ of Mandate with the California Court of Appeal, seeking a stay of the prejudgment order of possession.  (*Id.* ¶ 13.)  That petition was denied about one week later on grounds that California "Code of Civil Procedure section 1255.030 provides [Plaintiffs] an adequate remedy."  (*Id.* ¶ 14, Ex. D.)  That section allows Plaintiffs, by motion in the state court, to litigate "whether the amount deposited is the probable amount of compensation that will be awarded in the proceeding."  Cal. Civ. Proc. Code § 1255.030(a).

Plaintiffs filed this action in federal court on December 23, 2019, asserting a single 42 U.S.C. § 1983 claim which alleges that the SBCTA has taken their property without providing just compensation in violation of the takings clause of the Fifth Amendment.  (Compl.)  The SBCTA followed with the instant motion to dismiss, which argues that this Court lacks subject matter jurisdiction over Plaintiffs' takings claim, or alternatively, that the Court should dismiss the case under the *Colorado River* doctrine.  (Mot.)

---

reasonably be questioned."  Fed. R. Evid. 201(b).  Under Rule 201(b), a court may take judicial notice of the existence of matters of public record.  *See Marsh v. San Diego Cty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  Accordingly, the SBCTA's request for judicial notice is **GRANTED**.

# III.  ANALYSIS

The SBCTA argues that this Court lacks subject matter jurisdiction, or, in the alternative, that the Court should abstain under *Colorado River*.  For the following reasons, the Court concludes that it does have subject matter jurisdiction, but that abstaining under *Colorado River* and staying the case is appropriate.

## A.     Subject Matter Jurisdiction

The SBCTA first seeks to dismiss Plaintiffs' claim for lack of subject matter jurisdiction.  "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As such, they are presumed to lack jurisdiction in a particular case "unless the contrary affirmatively appears."  *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).  In deciding a Federal Rule of Civil Procedure 12(b)(1) motion challenging subject matter jurisdiction, the burden of proof is on the party asserting jurisdiction, and the court will presume a lack of jurisdiction until the pleader proves otherwise.  *See Kokkonen*, 511 U.S. at 377.

A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  With a facial attack, the challenger asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction, and a court must assume the truth of the complaint's non-conclusory allegations.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  With a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*

The SBCTA brings a facial jurisdictional challenge and asserts that this Court lacks jurisdiction over Plaintiffs' claim due to the pendency of the eminent domain State Action. The Court disagrees. Until last June, the pendency of the State Action would have rendered Plaintiffs' federal takings claim unripe and deprived this Court of jurisdiction. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnston City*, 473 U.S. 172 (1985) (holding that "[a] property owner whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights— and thus cannot bring a federal takings claim in federal court—until a state court has denied his claim for just compensation under state law"). Under the *Williamson County* rule, Plaintiffs would not have a ripe takings claim because they have not yet been denied just compensation in state court.

That rule, commonly referred to as the "state law exhaustion requirement," was upended last year in *Knick v. Township of Scott, Pennsylvania*. 139 S. Ct. 2162, 2167 (2019). In that case, the Supreme Court overruled *Williamson County*'s exhaustion requirement by holding that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Id*. After *Knick*, a property owner's Fifth Amendment rights are violated as soon as "the government takes his property without just compensation, and therefore [he] may bring his claim in federal court under § 1983 at that time." *Id. Knick* significantly altered the landscape regarding the ripeness of takings claims by permitting a plaintiff to assert them in federal court regardless of whether he has exhausted his state court remedies.

The SBCTA acknowledges that *Knick* overruled *Williamson County*'s exhaustion requirement. It nonetheless contends that this Court lacks jurisdiction over Plaintiffs' takings claim because it filed a direct condemnation action in state court before Plaintiffs filed this federal action. (*See* Opp. at 3–4.) This argument is not persuasive. Nothing in *Knick* purports to restrict the jurisdiction of federal courts to instances in which there is

not a direct condemnation action pending in state court.  Instead, *Knick* opened the doors to federal court for takings plaintiffs more broadly regardless of state court procedures and proceedings.  *See id.* at 2171 ("The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution.").  The pendency of the State Action does not divest this Court of jurisdiction over Plaintiffs' takings claim.

The SBCTA's reliance on *Providence City v. Thompson* is also misplaced.  *See* 2019 WL 4932759 (D. Utah Oct. 7, 2019).  There, a defendant landowner attempted to remove to federal court a direct condemnation proceeding filed against him in state court by relying on *Knick*.  *Id.* at *3.  The district court dismissed for lack of jurisdiction, holding that although *Knick* overruled *Williamson County*'s exhaustion requirement, it did not "convert state eminent domain actions into federal claims."  *Id.* at *4.  And because the face of the eminent domain complaint did not contain a federal cause of action, there was no basis for federal removal jurisdiction.  *Id.* (explaining that "[u]nlike *Knick*, there is no takings plaintiff in this action").  This case is markedly different from *Providence City*, because here, there are takings Plaintiffs.  Plaintiffs did not remove the underlying direct condemnation action from state court but instead, initiated a separate lawsuit alleging a federal takings claim.  The SBCTA's motion is **DENIED** to the extent it is premised on this Court lacking subject matter jurisdiction.

## B.   The *Colorado River* Doctrine

The SBCTA alternatively argues that the Court should dismiss Plaintiffs' claims under the *Colorado River* doctrine.  This doctrine has developed as "a form of deference to state court jurisdiction."  *Coopers & Lybrand v. Sun-Diamond Growers of Cal.*, 912 F.2d 1135, 1137 (9th Cir. 1990).  Where it applies, federal courts may dismiss or stay a

federal action when there are parallel state court proceedings involving the same matter. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The *Colorado River* doctrine is an exception to the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter" in federal court. *See id.* (quoting *McClellan v. Carland*, 271 U.S. 272, 282 (1926)). Therefore, it applies only in exceptional circumstances where "wise judicial administration," the "conservation of judicial resources," and the "comprehensive disposition of litigation" warrant abstention. *Id.* at 817–18.

The Ninth Circuit has laid out eight factors for the Court to consider in evaluating whether to stay or dismiss an action pursuant to *Colorado River*: "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *R.R. St. & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

The first factor, which applies only in situations where "there are pending state court proceedings involving the same property," is relevant here. *See Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017). The SBCTA initiated the State Action over one year ago and that action concerns the exact same property that is at issue in this case. The state court assumed jurisdiction over Plaintiffs' property and has made several rulings in the past year. Accordingly, this factor favors the SBCTA. *See id.*

(finding that this factor favored the application of *Colorado River* when the "state court first obtained jurisdiction over the [property], and the parallel proceedings presented the risk of inconsistent dispositions of the [property]").

The next factor—inconvenience of the federal forum—is neutral.  Both parties reside in San Bernardino, approximately two hours away from this Court.  Litigating before this Court in Los Angles would be far less convenient for the parties than litigating before the state court in San Bernardino.  *See Colorado River*, 424 U.S. at 820 (finding it "significant" that the federal court was located 300 miles away from the state court).  However, this level of inconvenience is not sufficient to tip this factor in the SBCTA's favor.  *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (finding that this factor was "unhelpful" and did not favor a stay when the federal court in Los Angeles was 200 miles away from the parties and the state court in San Luis Obispo).

Next, and perhaps most importantly, the third factor favors abstention because allowing this case to proceed would result in piecemeal litigation.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."  *Am. Intern. Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).  The risk of piecemeal litigation is present whenever there are overlapping state and federal proceedings, so for this factor to weigh in the SBCTA's favor, "there must be exceptional circumstances present that demonstrate that piecemeal litigation would be particularly problematic."  *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 843 (9th Cir. 2017).  Such circumstances are present here because allowing the two parallel actions to proceed simultaneously would be particularly problematic given the high likelihood of inconsistent judgments. *See Sompo Am. Ins. Servs., LLC v. Plaza Indem. Ins. Co.*, 2019 WL 6841988, at *2 (C.D. Cal. Oct. 1, 2019) (this factor favored abstention when the federal case asked the court

"to decide similar issues about the parties' claims and [it] could very well decide [those] issues differently" than the state court). The two actions seek identical determinations of the exact same issue: the amount that the SBCTA must compensate Plaintiffs for the temporary construction easement. Given the complexity of this inquiry and the need for expert testimony regarding appraisal and fair market value, it is highly unlikely that two courts answering this question would come to identical conclusions. (*See* Dkt. 11-1 [Defendant's Request for Judicial Notice, hereinafter "RJN"] at Ex. A [declaration of engineer hired by SBCTA to appraise the fair market value of the easement].) And the state court has already made some findings on the issue by determining that the SBCTA has not demonstrated that $12,000 was the probable amount of compensation. (*Id.* at Ex. C [Order for Prejudgment Possession].) Accordingly, this heightened risk of inconsistent judgments favors the application of the *Colorado River* doctrine.

The next factor, which regards the order in which the forums obtained jurisdiction, similarly favors the SBCTA. "Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *See Moses H. Cone*, 460 U.S. at 21. Here, the State Action was filed nearly one full year prior to this one and has progressed considerably since then. The parties fully briefed the SBCTA's motion for prejudgment possession and Judge Poncin ruled in the SBCTA's favor on May 13, 2019. (RJN at Ex. C.) Plaintiffs then appealed her ruling, and that appeal was subsequently denied by the California Court of Appeal. (Compl. ¶14, Ex. D.) All that remains now in the State Action is the determination of how much the SBCTA must compensate Plaintiffs for the temporary construction easement. By comparison, this action remains in its early stages and has not advanced meaningfully since being filed three months ago. The instant motion to dismiss is the first substantive action taken by either party. *Compare Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492–93 (5th Cir. 2006) (holding that this factor weighs in favor of abstention in a case where the federal action has not proceeded past filing the complaint)

*with Moses H. Cone*, 460 U.S. at 22–23 (finding the *Colorado River* exception was inapplicable when substantial progress had already been made in the federal suit).

The next factor concerns whether federal or state law provides the rule of decision on the merits. *See Montanore Minerals*, 867 F.3d at 1168. This factor favors Plaintiffs, but only slightly. Because Plaintiffs assert a federal constitutional claim, federal law will provide the rule of decision, but that decision will necessarily implicate state property law and state eminent domain law. *See id.* (finding that "the proper method to determine just compensation" was a state law issue); *see also F.E.R.C. v. Mississippi*, 456 U.S. 742, 767 n.30 (1982) ("[R]egulation of land use is perhaps the quintessential state activity."). Furthermore, "[i]f the state and federal courts have concurrent jurisdiction over a claim, this factor becomes less significant." *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Concurrent jurisdiction exists here, so this factor carries less weight.

The sixth factor asks courts to consider "whether the state court might be unable to enforce federal rights." *See Montanore Minerals*, 867 F.3d at 1169. This factor favors abstention when "the state court has authority to address the rights and remedies at issue in this case." *R.R. Street & Co.*, 656 F.3d at 981. Plaintiffs have offered no reason as to why the state court would be unable to protect their right to obtain just compensation. *See Nakash*, 882 F.2d at 1416 (this factor favored abstention when the plaintiff "has not suggested any reason why the state court cannot adequately protect his rights"). Prior to *Knick*, state courts were primarily responsible for providing this remedy and thus have considerable experience in similar cases. To that end, the California Legislature has enacted a detailed statutory scheme for its courts to follow when determining the level of compensation owed to property owners in eminent domain proceedings. *See, e.g.*, Cal. Civ. Proc. Code § 1255.030. This factor favors abstention.

Turning to the next factor, courts consider "the vexatious or reactive nature of either the federal or the state litigation." *R.R. Street & Co.*, 656 F.3d at 981 (quoting *Moses H.* Cone, 460 U.S. at 26)). On this factor, courts analyze "whether either party . . . pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca Ins. Co.*, 862 F.3d at 846. The timeline here indicates that Plaintiffs filed this action in reaction to unfavorable state court rulings, so this factor also favors the SBCTA. *See Nakash*, 882 F.2d at 1417 (holding that on this factor, court should consider "whether the second suit is an attempt . . . avoid adverse rulings by the state court"). Plaintiffs filed the instant federal action only after receiving several adverse rulings in the state trial and appellate courts on the SBCTA's motion for prejudgment possession.

The final factor considers "''whether the state court proceeding sufficiently parallels the federal proceeding' in order to ensure 'comprehensive disposition of litigation.'" *Montanore Minerals*, 867 F.3d at 1170 (quoting *R.R. St. & Co.*, 656 F.3d at 982). If there is substantial doubt as to whether the state proceedings will resolve the federal action, the federal court should exercise jurisdiction. *See Intel Corp. v. Adv. Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). Though exact parallelism between the two proceedings is not required, "substantial similarity of claims is necessary before abstention is available." *Seneca Ins. Co.*, 862 F.3d at 845 (internal quotations omitted). This factor favors the SBCTA because the two actions are functional equivalents of each other. As discussed above, both seek a judicial determination of how much the SBCTA must pay Plaintiffs for the temporary construction easement that covers a portion of their backyard. Given the parallelism between the two cases, the Court is confident that the State Action would ensure comprehensive disposition of this litigation. *See Montanore Minerals*, 867 F.3d at 1170.

Although application of the *Colorado River* doctrine is warranted only in exceptional circumstances, such circumstances are present here. Nearly all of the factors

of the factors weigh in favor of staying this action in deference to the pending State Action.  *See Nakash*, 882 F.2d at 1417 (holding that the district court did not abuse its discretion by abstaining when a majority of the relevant factors supported a stay). Specifically, the Court has significant concerns that conflicting rulings would result if this action proceeds in parallel with the State Action.  And the state court obtained jurisdiction well before this Court and has made substantial progress in bringing the State Action to a conclusion.

The SBCTA contends that when *Colorado River* abstention applies, the federal action should be dismissed altogether.  In fact, the opposite is true.  *See Colorado River*, 424 U.S. at 818–19 (allowing for dismissal only under the "clearest of justifications" and instead preferring a stay of the federal action).  "When it is appropriate for a court to decline to exercise jurisdiction pursuant to the *Colorado River* doctrine, we generally require a stay rather than a dismissal."  *Montanore Minerals*, 867 F.3d at 1166.  Staying this case promotes the efficient use of judicial resources by avoiding duplicative proceedings.  *See Colorado River*, 424 U.S. at 818.  The stay also prevents the specter of inconsistent judgments from two courts passing on identical questions of law and fact. Thus, it is in the interest of wise judicial administration to stay this action until the State action is resolved.

//
//
//
//
//
//
//
//

-12-

**IV.  CONCLUSION**

For the foregoing reasons, the SBCTA's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.**  This action is **STAYED** pending the resolution of the State Action.  The parties shall file a status report with the Court no later than fourteen days after the conclusion of the State Action.

DATED:     March 18, 2020

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE